**OPINION ON REHEARING**



FILED
Nov 04 2020, 9:03 am
C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa Diane Manning
Danville, Indiana

ATTORNEY FOR APPELLEES

John J. Moore
Touhy Bailey & Moore LLP
Indianapolis, Indiana

I N   T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Monster Trash, Inc., <br> *Appellant/Petitioner,* <br><br> *v.* <br><br> Owen County Council, Owen County Commissioners, and Owen County Board of Zoning Appeals, <br><br> *Appellee/Respondent.* | November 4, 2020 <br><br> Court of Appeals Case No. 20A-PL-918 <br><br> Appeal from the Morgan Circuit Court <br><br> The Hon. Matthew G. Hanson, Judge <br><br> Trial Court Cause No. 55C01-2002-PL-247 |

**Bradford, Chief Judge.**

[1]     On July 30, 2020, in a published opinion, we reversed the trial court's judgment entered in favor of Appellees/Respondents Owen County Council, Owen County Commissioners, and Owen County Board of Zoning Appeals ("BZA") (collectively, "the County") and remanded for further proceedings.  The County

now seeks rehearing, arguing that Monster Trash's proposed operation of a solid waste transfer station is not a permitted activity in a heavy industrial zone, and we grant rehearing for the purpose of clarifying our conclusion that it is.

[2] Although we concluded in our original opinion that waste transfer stations are not absolutely prohibited by the Ordinance if they are unlicensed, there is also the question of whether they are permitted in a heavy industrial zone, which is where Monster Trash seeks to operate such a facility. Section 3.3 of the Ordinance provides, in part, as follows:

> 3.3 - Permitted Uses In Zones
> [….]
>> 2. Heavy:
>>> a. Arsenal
>>> b. Central mixing plant for mortar, plaster, concrete, paving material, or asphalt
>>> c. Dehydration plant
>>> d. Cement lime ingredient, lime, gypsum and plaster
>>> e. Petroleum refinery and distillation
>>> f. Smelting of ore or metal
>>> g. Wholesale or bulk storage of gasoline or other petroleum products
>>> h. Railroad storage yards or shops
>>> i. Sanitary landfills, reduction or incineration of trash, garbage, offal or dead animals
>>> j. Fat rendering
>>> k. Manufacture of acid, alcohol, ammonia, bleaching powder, celluloid, explosives, gas, glue, pyroxylin, or nitrocellulose
>>> l. Other uses in Permitted Land Use Table

Appellant's App. Vol. II pp. 40, 42.  The County essentially argues that because "operating a waste transfer station" is not listed in Section 3.3, it is not a permitted use.  For its part, Monster Trash argues that the activities of a waste transfer station are, in fact permitted by Section 3.3(i), which lists "reduction […] of trash [or] garbage" as a permitted use.  We agree with Monster Trash.

[3]     While we do show substantial deference to the County's interpretation of the Ordinance, it is, in the end, the express language of the Ordinance that controls our interpretation, and our goal is to determine, give effect to, and implement the intent of the enacting body.  *See Shaffer v. State*, 795 N.E.2d 1072, 1076 (Ind. Ct. App. 2003).  With this in mind, we now turn to that plain language.  As it happens, none of the terms at issue are defined in the Ordinance, which provides that "[a]ny words not defined [in the Ordinance] shall be construed in their general acce[p]ted meanings as defined by Webster's Dictionary."[1]  The first two definitions of "reduce" in Webster's are "to draw together or cause to converge" and "to diminish in size, amount, extent, or number[.]"  *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1905 (Phillip Babcock Gove et al. eds., G.&C. Merriam Company 1964).  Moreover, while the term "waste transfer station" is not defined in Webster's, Indiana Code section 13-

---

[1] Although Merriam-Webster produces and markets several dictionaries bearing the brand name "Webster's," *see* https://www.merriam-webster.com/shop-dictionaries/dictionaries (last accessed October 19, 2020), we assume that the drafters of the Ordinance intended that the company's flagship dictionary be used, which, since 1961 and with only minor revisions not relevant here, has been the *Webster's Third New International Dictionary of the English Language, Unabridged*.  *See* Stephan Fatsis, *The Definition of a Dictionary*, SLATE (last accessed October 19, 2020), http://www.slate.com/articles/life/culturebox/2015/01/merriam_webster_dictionary_what_should_an_online_dictionary_look_like.html.  Consequently, all references to "Webster's" in this opinion on rehearing will be to that work.

11-2-235(a) defines it as "a facility where solid waste is transferred from a vehicle or a container to another vehicle or container for transportation." IDEM, the agency that licenses waste transfer stations, provides additional guidance in its "Fact Sheet" on Solid Waste Transfer Stations:

> Solid waste transfer stations are facilities where solid waste, mainly municipal solid waste (MSW), is unloaded from collection vehicles or containers for reloading into larger, long-distance vehicles for transport to landfills or other permitted solid waste facilities for final disposal. Facilities that move solid waste from one mode of transportation to another, such as rail to road, can also be considered transfer stations.

Appellant's App. Vol. II p. 175. A reasonable and fair description of a waste transfer station, then, is that it is a facility in which waste is drawn together (from collection vehicles to transport vehicles), caused to converge (again, from collection vehicles to transport vehicles), or diminished in extent (collecting waste from homes and businesses and concentrating it at the facility), activities that all fit squarely within the Webster's definition of "reduce," one of the uses listed in Section 3.3(i) of the Ordinance. So, while a solid waste transfer station may not be in the business of reducing waste by compaction or incineration, we conclude that its activities nonetheless qualify as permitted uses in a heavy industrial zone pursuant to the plain language of the Ordinance.

[4] Because we have clarified that the operation of a waste transfer station entails uses explicitly permitted by the Ordinance, our original disposition stands. To repeat that disposition, we reverse the judgment of the trial court and remand with instructions to, within thirty days of the certification of this opinion on

rehearing, order the BZA to issue a document to IDEM and/or Monster Trash confirming that zoning requirements are not required for the location of a solid waste transfer station on the Property.

Najam, J., and Mathias, J., concur.